# 22-2010

# United States Court of Appeals
### *for the*
# Fourth Circuit

---

LORETTA SABRINA MARSHALL, Individually
and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

– v. –

GEORGETOWN MEMORIAL HOSPITAL, d/b/a Tidelands Health,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF SOUTH CAROLINA AT CHARLESTON IN CASE NO. 2:21-CV-02733-RMG-JDA
HONORABLE RICHARD MARK GERGEL

# OPENING BRIEF OF APPELLANT

THOMAS A. BRIGHT
OGLETREE DEAKINS NASH SMOAK
  & STEWART, PC
P.O. Box 2757, Room 500
Greenville, South Carolina 29602
(864) 240-8352
thomas.bright@ogletree.com

*Counsel for Defendant-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 22-2010        Caption: Loretta Marshall, et al. v. Georgetown Memorial Hospital

Pursuant to FRAP 26.1 and Local Rule 26.1,

Georgetown Memorial Hospital d/b/a Tidelands Health
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                            ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: s/Thomas A. Bright                    Date:    October 4, 2022

Counsel for: Georgetown Memorial Hospital

- 2 -

Print to PDF for Filing

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUE ON APPEAL .....................................2

PROCEDURAL HISTORY ................................................................3

FACTS .............................................................................................5

SUMMARY OF ARGUMENT ...........................................................8

ARGUMENT ....................................................................................9

      A.     Standard of Review .........................................................9

      B.     Arbitration is Favored and Mandatory Under the Federal
              Arbitration Act, 9 USC § 1 *et. seq.* (FAA)............................9

      C.     The Undisputed Facts Compel a Finding that the Parties
              Entered Into an Agreement to Arbitrate Any Claims Arising
              from Marshall's June 26, 2020 Application for Employment ...........11

CONCLUSION ................................................................................21

STATEMENT OF ORAL ARGUMENT ..............................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Adkins v. Labor Ready, Inc.*,
   303 F.3d 496 (4th Cir. 2002) ............................................................9, 10, 11, 12

*Callan v. Singletary*,
   2009 WL 2997001 (D.S.C. Sept. 14, 2009) ....................................................12

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)................................................................................................9

*Clark v. Goldline International, Inc.*,
   2010 WL 4929438 (D.S.C. Nov. 30, 2010).....................................................15

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012).............................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..............................................................................................10

*Doctor's Assocs. v. Casarotto*,
   517 U.S. 681 (1996)..............................................................................................12

*Epic Systems v. Lewis*,
   138 S.Ct. 1612 (2018)..........................................................................................11

*First Baptist Church v. Creed Son, Inc.*,
   276 S.C. 597, 281 S.E.2d 121 (S.Ct.1981) .......................................................16

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)............................................................................................9, 11

*Herron v. Century BMW*,
   387 S.C. 526, 693 S.E.2d 394 (S. Ct. 2011) ....................................................16

*Hooters of Am., Inc. v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) ................................................................................9

*Meyer v. Uber Technologies, Inc.*,
   868 F.3d 66 (2nd Cir. 2017) .........................................................................19, 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................................................................9, 11

*Moultry v. Tony Serra Ford, Inc.*,
2019 WL 2392443 (N.D. Ala. June 6, 2019) ...............................17, 18

*Munoz v. Green Tree Financial Corp.*,
343 S.C. 531, 542 S.E.2d 360,365 (S.Ct. 1981) ..................................16

*Muriithi v. Shuttle Exp., Inc.*,
712 F.3d 173 (4th Cir. 2013) ............................................................9

*Stanley Smith and Sons v. Limestone College, et al.*,
283 S.C. 430, 322 S.E.2d 974 (Ct. App. 1984) ....................................18

*Sutton v. Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) ...............................................19

**Statutes**

9 U.S.C. § 1 *et seq.*..........................................................................9

9 U.S.C. § 2 ..................................................................................10

9 U.S.C. § 3 ..................................................................................10

9 U.S.C. § 4 ..................................................................................10

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

29 U.S.C. § 701 *et seq.*....................................................................3

29 U.S.C. § 1001 *et seq.*..................................................................3

42 U.S.C. § 2000e *et seq.*................................................................1

42 U.S.C. § 2003 *et seq.*..................................................................3

42 U.S.C. § 12101 et seq.................................................................1, 3

## **JURISDICTIONAL STATEMENT**

Marshall's Complaint asserts federal claims under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* and Title VII of the Civil Rights Act of 1964, as amended.  42 U.S.C. § 2000e *et seq.* (*See* Complaint, J.A. 6-40)[1].  Thus, the federal District Court had subject matter jurisdiction over these claims under 28 U.S.C. § 1331.  On September 16, 2021, Tidelands filed its Motion to Stay Litigation and Compel Arbitration or, Alternatively, to Dismiss and Supporting Memorandum.  (*See* J.A. 41-70).  The District Court, on September 6, 2022, adopted the Report and Recommendation of the Magistrate Judge denying Tidelands Health's Motion to Compel Arbitration, (*See* Order and Opinion dated September 6, 2022, J.A. 361- 67). and this appeal followed.  (*See* Notice of Appeal dated September 20, 2022, J.A. 368).  Therefore, this Court has appellate jurisdiction in this case pursuant to 28 U.S.C. § 1291.

---

[1] References to the Joint Appendix in this case shall be referred to as "JA" followed by the appropriate page and/or Exhibit No.

## <u>STATEMENT OF THE ISSUE ON APPEAL</u>

Did the District Court commit reversible error in failing to conclude that the parties entered into an agreement to arbitrate any issues arising out of Marshall's application for employment with Tidelands and the application process as set forth in the application Marshall submitted online to Tidelands on or about June 26, 2020?

## PROCEDURAL HISTORY

This matter is an employment discrimination case.  Marshall filed her Complaint in this case on August 24, 2021, alleging causes of action under the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12101 *et seq*., Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2003 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Rehab Act), and Section 501 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA).  Plaintiff also asserted a wrongful discharge claim under South Carolina state law.  Plaintiff asserted her claims on her own behalf and on behalf of all similarly situated individuals.  (Complaint, J.A. 6-40).

On September 16, 2021, Defendant filed its Motion to Stay Proceedings and Compel Arbitration or, Alternatively, to Dismiss with Supporting Memorandum. (J.A. 41-70).  The U.S. Magistrate issued her Report and Recommendation denying the Motion to Compel Arbitration on December 29, 2021.  (J.A. 117-130). Defendant filed its Objections to the Magistrate's Report on January 19, 2022, which included a Supplemental Affidavit of Angela Traver, Director of Employee Relations for Tidelands.  (J.A. 131-228).  On February 14, 2022, after reviewing Tidelands' Objections and the Supplemental Briefs filed by the parties, the District Court, noting that Tidelands' Objections raised new information, remanded the matter back to the Magistrate Judge for further consideration.  (J.A. 235-236).  After

further briefing by the parties, the Magistrate Judge issued her second Report and Recommendation denying Defendant's Motion to Compel on July 7, 2022. (J.A. 306-323). Tidelands filed its Objections to this Report and Recommendation on August 1, 2022. (J.A. 324-336). After further briefing, the District Court issued its Order and Opinion adopting the Magistrate's Report and Recommendation to deny Defendant's Motion to Compel Arbitration on September 6, 2022. (J.A. 361– 367). Tidelands filed its Notice of Appeal on September 20, 2022. (J.A. 368).

# **FACTS**

The operative facts controlling this appeal are not in dispute. The facts pertinent to this appeal are laid out in a clear fashion in the Magistrate's Second Report and Recommendation dated July 7, 2022. (J.A. 308-311). The issue for this appeal is whether these facts give rise to an agreement between the parties to arbitrate any issues arising out of Marshall's June 26, 2020 application and that application process.

The facts here are extremely simple. Marshall applied for a job as a nurse with Tidelands by completing and submitting an online application on or about April 12, 2016. (Magistrate's Second Report and Recommendation, J.A. 308-309). That application included an arbitration provision which stated as follows:

> You and Tidelands Health recognize that differences may arise between you during the application that cannot be resolved without the assistance of an outside party. Both you and Tidelands Health agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment and application process exclusively by arbitration to be administered by the American Arbitration Association ("AAA") pursuant to its Rules for the resolution of employment disputes… Some, but not all, of the types of claims covered are: discrimination or harassment on the basis of race, sex, age, national origin, religion, disability, genetic information, or any other unlawful basis; breach of contract; unlawful retaliation; employment-related tort claims such as defamation or negligence; and claims arising under any statutes or regulations applicable to applicants…

*Id.* at 308-309. As the Magistrate pointed out in her Report and Recommendation, Marshall concedes that she signed this Arbitration language as a part of applying for

5

a job with Tidelands in 2016. *Id.* at 309. The District Court went further, noting that Marshall "indisputedly" consented to arbitration in her 2016 application. (J.A. 364). Indeed, on April 12, 2016, at 9:35a.m., Marshall checked the box on the application labeled "I Accept", wherein she acknowledged she was

> "applying [her] e-signature, which is just as valid as [her] handwritten signature, and agreeing to the PRE-EMPLOY[ME]NT STATEMENT which contains the Agreement to Arbitrate, and other items all of which [she was] agreeing to, certifying, and admitting that [she understood]."

(J.A. 52 (quoting from Application)). Thus, there is no dispute that the 2016 application contained a valid and binding arbitration provision and that Plaintiff, by submitting her application and asking to be considered for a position was agreeing to be bound by that arbitration provision. The Report and Recommendation of the Magistrate and the decision of the District Court in adopting that Report and Recommendation make this fact abundantly clear.

As Marshall was not hired in 2016, she returned to the same Tidelands on-line application portal in June, 2020, to ask to be considered for another job. (J.A. 311). As set forth in the Supplemental Affidavit of Director of Employee Relations, Angela Traver, Marshall gained access to the portal and her prior application by signing in with her unique password in order to access her profile, which included information from her 2016 application. (J.A, 141, ¶4). The Portal provided Marshall with access to her prior application which included the same arbitration language from her 2016 application. (J.A.141-142, ¶5 - 6). Marshall was given the

opportunity to modify her previous application prior to submitting it to Tidelands for consideration. (J.A. 141, ¶5). Marshall did, indeed, modify her 2016 application prior to submission in 2020 by changing the date she would be eligible to start work. (J.A. 173-177). It is important to note, that at the very top of the application that Marshall submitted in 2020 is the following language:

> Arbitration Notice: This Application and Application Process Is Subject to Arbitration…

(J.A. 173). If Marshall had scrolled further down the page on the application, she would have found the more detailed arbitration language. (J.A. 175–176). She would have further found that it was the exact same arbitration language that was contained in the 2016 application she submitted previously, (J.A. 50-51), to which the District Court noted she indisputedly consented. (J.A. 364). The application contained the above Notice, the full Arbitration provision cited above, and the pertinent factors which Marshall wanted Tidelands to consider in evaluating her application for employment. They were all contained in one document. (J.A. 173-177). To activate her application for consideration, Marshall had to check a box labeled "I Submit", which notified Tidelands that Marshall had applied for and wished to be considered for a job. (J.A. 157, 159). These are the only facts pertinent to this Appeal. The question for this Court is whether these facts reflect an Agreement to Arbitrate any dispute arising from the 2020 application/application process.

# SUMMARY OF ARGUMENT

The Court of Appeals should reverse the decision of the Court denying Tidelands' Motion to Compel Arbitration and Order the District Court to refer this case to arbitration pursuant to the Agreement to Arbitrate contained in the June 26, 2020 on-line application that Marshall filled out and submitted to Tidelands.  In filling out the application in 2020, Marshall was asking Tidelands to consider her for employment.  Had Marshall read the entire application, she would have seen the Agreement to Arbitrate in the application and realized that the *quid pro quo* for having her application considered for employment by Tidelands was the Agreement to Arbitrate.  This was the exact same Agreement to Arbitrate that was contained in the application Marshall submitted for consideration in 2016, and which she acknowledges was a valid and enforceable Arbitration Provision.  By affirmatively modifying and then submitting the Application in June, 2020, Plaintiff was agreeing to the Arbitration Provision in the Application she was submitting.  Marshall cannot avoid the impact of the Agreement to Arbitrate by simply saying she did not read it.

# ARGUMENT

A.  Standard of Review

The decision of a district court to deny a Motion to Compel Arbitration is reviewed "*de novo*" by this court. *Muriithi v. Shuttle Exp., Inc.,* 712 F.3d 173, 178 (4th Cir. 2013). Similarly, questions of state contract law concerning the validity of the parties' Arbitration Agreement are also subject to de novo review. *Id*.

B.  Arbitration is favored and mandatory under the Federal Arbitration Act, 9 USC § 1 *et seq*. (FAA).

Congress enacted the FAA to reverse the longstanding "judicial hostility to arbitration" and to place arbitration on the same footing as other contracts. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668 (2012); see also *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001) (recognizing the benefits of arbitration agreements in the employment context). In fact, the FAA establishes a "liberal policy of favoring arbitration agreements." *CompuCredit*, 132 S. Ct. at 669.

Courts consistently adhere to the strong federal policy favoring arbitration and arbitration agreements. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). One of the primary sources and expressions of this federal policy is contained in the Federal Arbitration Act ("FAA") itself, 9 U.S.C. § 1, *et seq. See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" (quoting *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Federal Arbitration Act (FAA) provides a federal district court with the authority to enforce an arbitration agreement by compelling the parties to arbitrate their dispute. 9 U.S.C. § 4.

Section 2 of the FAA states as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The provisions of the FAA are mandatory. Consequently, courts must stay a proceeding that is subject to arbitration and compel arbitration when a valid arbitration agreement exists. 9 U.S.C. §§ 3-4; *Adkins,* 303 F.3d at 500 ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory."). In addition, the FAA requires Courts to compel the arbitration of any claims covered by an arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)); *see*

*also Epic Systems v. Lewis*, 138 S.Ct. 1612, 1621 (2018) ("Indeed, we have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'") (quoting *American Express Co. v. Italian Colors Restaurant,* 570 U. S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)).

Further evidencing the strong federal policy favoring arbitration and recognizing the FAA's legislative mandate, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25; *see also Adkins*, 303 F.3d at 500 ("[Because] arbitration constitutes a more efficient dispute resolution process than litigation...'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'") (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)). Indeed, whether a matter is arbitrable "must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26.

C.  <u>The undisputed facts compel a finding that the parties entered into an agreement to arbitrate any claims arising from Marshall's June 26, 2020 application for employment.</u>

The validity of an arbitration agreement is determined by reference to general

principles of state contract law. *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 685 (1996) ("'[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) (emphasis included)). In South Carolina, formation of a valid contract requires "offer, acceptance, and valuable consideration." *Callan v. Singletary*, 2009 WL 2997001, *4 (D.S.C. Sept. 14, 2009) (citing *Carolina Amusement Co. v. Connecticut Nat'l Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C. Ct. App. 1993)). Here, Tidelands offered dispute resolution procedures to Plaintiff by providing arbitration in connection with the application process. The Application provides that arbitration is the exclusive means for resolving all covered disputes, not the Courts or other forums. Plaintiff's acceptance of the arbitration provision is demonstrated by her action of updating her Application, submitting the application which contained the arbitration language, and <u>asking to be considered for a position in 2020</u>. In addition, since both Plaintiff and Tidelands agreed to be bound by the arbitration provision, the agreement to arbitrate is supported by sufficient consideration. *Adkins*, 303 F.3d at 501. (finding arbitration agreement supported by consideration where both employee and employer agreed to be bound by arbitration process); *see also O'Neil*, 115 F.3d 272 ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement" (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292,

300 (S.C. 1996)).

In her initial Declaration dated September 15, 2021, Angela Traver, Director of Employee Relations and HR Compliance at Tidelands Health, stated that subsequent to Marshall's initial application in 2016, each time Marshall applied for a new job at Tidelands, she updated and submitted a revised application form, which included the same arbitration language as the 2016 application. (J.A. 45, ¶8). In her Supplemental Declaration dated January 19, 2022, Ms. Traver described in detail how Plaintiff would have submitted her new application in 2020. (J.A. 140-144). Traver explained in detail how, in 2020, Marshall would have accessed the Tidelands Health on-line application portal where she was given access to the information contained in her 2016 application. (J.A. 141-142, ¶3-6). Indeed she was advised to make sure she updated her prior application before applying for a new job. (J.A. 141, ¶3). In Marshall's case, she accessed her 2016 application and updated it to show the dates in 2020 that she would be available to work. (J.A. 174). Thereafter, on June 26, 2020 at 5:23a.m., she "submitted" this application, which included the arbitration provision, and asked that Tidelands Health consider her for a job. (J.A. 173-177). To do so, she clicked the "Submit" button on the screen associated with her newly-revised 2020 application, which Marshall, herself, revised. By clicking "Submit," Marshall was informing Tidelands Health that all the information in the new application, which included the arbitration provision, was accurate and ready

13

for consideration by Tidelands Health.

It is important to note, that in June, 2020, when the application came up on Marshall's computer screen, at the very top, just below "Employment Application", Tidelands informed Marshall, in bold print and capital letters as follows:

**ARBITRATION NOTICE: THIS APPLICATION AND APPLICATION PROCESS IS SUBJECT TO ARBITRATION…"**

(J.A. 173). Further down in the body of the application was the more detailed Agreement to Arbitrate. (J.A. 175-176). In 2020, when Plaintiff was applying for a new job, the Agreement to Arbitrate was open and notorious and available for Marshall to review. It was all there in the application she was revising. It was all in one document. Nothing was hidden. The 2020 application contained the exact same Agreement to Arbitrate as the 2016 application, and both the Magistrate and the District Judges concluded that the language in the 2016 application constituted a valid agreement to arbitrate any and all claims. (J.A. 309, 364). In all other respects, Marshall's 2020 and 2016 applications were identical. *Compare* J.A. 48-52 (2016 Application) with J.A. 173-177 (2020 Application).

What does all this tell us? It tells us that in 2016, Marshall submitted an application which she admits contained a binding Agreement to Arbitrate, and she asked Tidelands Health to consider her application for employment. When Marshall returned to the Tidelands on-line application portal in June, 2020, she went through the <u>exact same process</u>. She reviewed and modified the information contained in

her prior application which contained the exact same Arbitration Agreement, and then took the affirmative step to hit the "Submit" button asking Tidelands Health to, again, consider her revised application with the arbitration provision. That very application, which was time and date stamped June 26, 2020 5:23 a.m., was identical to the application she submitted in 2016 except for the dates she was available to work, which she had modified. (J.A. 173-177). She followed the exact same process and was presented with the exact same information, including the Agreement to Arbitrate. Yet, Marshall is arguing that the new application which she modified and that she submitted and asked Tidelands Health to consider in 2020, and which contained the same Agreement to Arbitrate, which she submitted at 5:23 a.m. on June 26, 2020, did not manifest an intent to agree to arbitration. What is Plaintiff's argument? How does she justify these seemingly contradictory positions on identical facts?

First and foremost, she argues that because there was a "Submit" button at the top of her application, she may have never read the arbitration language that was contained further down in the application. But as this Court is well aware, failure to read arbitration language contained in an agreement has never been a defense to the enforceability of an arbitration agreement. *Clark v. Goldline International, Inc.*, 2010 WL 4929438 *5-6 (D.S.C. Nov. 30, 2010) (Agreement to arbitrate will not be set aside on ground that the arbitration clause was not noticed or explained since the

party signing the agreement is presumed to have read it). *See also Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 542 S.E.2d 360,365 (S.Ct. 1981) (A person who can read is bound to read an agreement before signing it); *First Baptist Church v. Creed Son, Inc.*, 276 S.C. 597, 281 S.E.2d 121, 123 (S.Ct.1981) (A party to a contract incorporating an arbitration provision cannot escape the obligation of such a provision by simply declaring, "But I did not read the whole agreement.").

Indeed, the courts in South Carolina have routinely rejected the defense that not reading a contract is a defense to its enforceability. In *Munoz*, 542 S.E.2d at 365 (S. Ct. 2001), the Supreme Court of South Carolina rejected a party's argument that their failure to read the arbitration language in a contract was a valid defense to a motion to Compel Arbitration. As stated by the Court:

[a] person who can read is bound to read an agreement before signing it.

*Id.* at 365. *See also Herron v. Century BMW*, 387 S.C. 526, 693 S.E.2d 394, 398 (S. Ct. 2011) (Our jurisprudence forbids us to allow (a party) to invalidate the enforceability of the arbitration agreement by claiming they did not read it.); and *First Baptist Church of Timmonsville,* 261 S.E.2d at 123. ("[a] party to a contract incorporating an arbitration provision cannot escape the obligation of such a provision by simply declaring "But I did not read the whole agreement").

Moreover, this is the exact same document that Plaintiff reviewed, filled out, "Accepted" and "Submitted" in 2016, and which she agreed constituted a valid

arbitration agreement. When Plaintiff filled out her application four (4) years later, nothing was changed except the changes Plaintiff herself made. Both applications had the arbitration notice at the top and the identical arbitration language in the body of the application. And let us not forget that Plaintiff wanted her application (which contained the arbitration language) to be considered by Tidelands in evaluating her for employment. By submitting her application on June 26, 2020, Plaintiff asked Tidelands to consider her for the position she identified. The very application she was submitting for consideration informed her that the *quid pro quo* for being considered for employment was agreeing to arbitrate any claims arising from the application process. She did not have to manipulate through several websites to review the arbitration language. It was all right there on the very application she was submitting. To conclude that she did not enter into an agreement to arbitrate simply because she did not read the full document would fly in the face of the decisions of the South Carolina Courts. Indeed, such a decision would <u>encourage</u> parties not to read contracts in their entirety in order to invalidate contractual provisions. Surely, one cannot avoid the obligation to arbitrate simply by "averting their eyes."

A case from another jurisdiction dealing with a similar fact pattern serves to underscore this point. In *Moultry v. Tony Serra Ford, Inc.*, 2019 WL 2392443, (N.D. Ala. June 6, 2019), an applicant submitted their employment application by filling

out a form online.  The application contained an arbitration provision, but Plaintiff denied ever reading it.  In rejecting the Plaintiff's argument that the arbitration provision was not enforceable because plaintiff never read it, the Court noted that had Plaintiff "scrolled to the bottom of the document", he would have seen the arbitration provision.  In the alternative, the Court noted that a party is responsible for reviewing the entire document before submitting an application.  The same logic applies here.  The application Marshall submitted and asked Tidelands to consider contained the exact same arbitration provision that was contained in the 2016 application, a provision which Marshall concedes was an enforceable arbitration provision.  Just as in 2016, she was asking that Tidelands consider her application, which contained the arbitration provision.  Just like the Plaintiff in *Moultry*, had she simply scrolled to the bottom of the application, she would have seen that arbitration provision before hitting "I Submit".  The essence of Plaintiff's argument is simple, "I did not read the entire document."  This argument has been rejected countless times in South Carolina, and it should be rejected here.

Next, Marshall argues that because she did not specifically "Agree to" or "Accept" the Arbitration Provision in the 2020 application, there was no "Agreement to Arbitrate."  .  However, assent can be manifested by written or spoken word <u>or by conduct</u>.  *Stanley Smith and Sons v. Limestone College, et al.*, 283 S.C. 430, 322 S.E.2d 974 (Ct. App. 1984). This takes into consideration the transactional context

in which the offeree acted. So long as the proposed agreement to arbitrate was reasonably conspicuous and communicated to the offeree, and the offeree acted with the intention of entering into a forward-looking relationship, assent can be manifested by one's conduct. *See Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2nd Cir. 2017); *see also Sutton v. Coinbase, Inc.*, 354 F. Supp. 3d 156 (E.D.N.Y. 2019).

Here, Plaintiff manifested her assent to arbitration through her conduct. First, she had read this exact same application with the arbitration language in 2016 and clicked on the "I Accept" button acknowledging the Agreement to Arbitrate. Indeed, she has admitted that the 2016 application contained a valid and binding Agreement to Arbitrate. In 2020, she filled out the exact same application (with some minor changes she made), with the same Agreement to Arbitrate language, and took the affirmative step of hitting the "Submit" button in order to have it forwarded to Defendant for consideration. Plaintiff wanted the benefit of being considered for a job. She knew that the application she filled out in 2016, which was identical to the 2020 application, had an arbitration provision. And she knew that the 2020 application was covered by an Arbitration Agreement, as the application says so at the very top of the page. Nothing was hidden. The arbitration language was open and notorious. The only reason Marshall alleges she did not see the arbitration provision is her statement she did not read the entire document. Any reasonable

person in Plaintiff's position would have been on inquiry notice of the terms of the Arbitration Agreement. *See Meyer*, 868 F.3d at 74-75. By her conduct of "Submitting" the completed application which contained the arbitration language, and asking to be considered for a job, Plaintiff manifested her intent to be bound by the arbitration provision contained in the application she filled out and submitted. Plaintiff was looking forward to an ongoing relationship with Defendant. To conclude otherwise would allow Plaintiff to benefit by disingenuously contending that she was unaware of the arbitration language in the 2020 application she submitted to Defendant for consideration because she simply "averted her eyes" and did not read the entire document.

## **CONCLUSION**

As noted at the beginning, the facts of this case are rather simple. In 2016, Marshall applied for a job at Tidelands using an on-line application, and the application she filled out contained a valid and enforceable arbitration provision which Marshall and the District Court have both acknowledged was binding. In 2020, Marshall returned to the Tidelands on-line portal with the intent of applying for another position and asking to be considered for that job since she was not hired in 2016. She pulled up her prior on-line application, which contained the exact same Agreement to Arbitrate, made some changes to the content of her application, and hit the "I Submit" button in the portal to submit her application, thereby asking to be considered for another job. The application, at the top, noted it was subject to arbitration. The body of the application contained the exact same Agreement to Arbitrate that was contained in the 2016 application, a provision that the District Court and Marshall both acknowledge was valid and enforceable. The <u>only</u> reasons Marshall argues that the same provision in the 2020 application was not enforceable are the following:

1) She did not read the entire application in 2020, so she never saw the arbitration language in 2020 (although she <u>had</u> read it in 2016); and

2) She never specifically stated that she agreed to the arbitration language. As noted above, failure to read a document (averting the eyes) has never

21

been an acceptable reason for rejecting the enforceability of a valid arbitration provision.  Second, by her conduct of submitting her application and asking to be considered for another position, Marshall agreed to the *quid pro quo* for being considered for a job, which was binding arbitration.  For these reasons, the decision of the District Court should be reversed and the matter should be submitted to arbitration pursuant to the parties' agreement.

## STATEMENT OF ORAL ARGUMENT

Appellant requests oral argument.

Dated this the 10th day of February, 2023.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/Thomas A. Bright
Thomas A. Bright
(Fed. Ct. ID No. 1476)

Attorney for Tidelands-Appellee,
Tidelands Health ASC, LLC

The Ogletree Building
300 North Main Street, Suite 500
Greenville, SC 29601
T:  864.271.1300
F:  864.235.8806
thomas.bright@ogletree.com

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. 22-2010    **Caption:** Loretta Marshall v. Georgetown Memorial Hospital

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]  this brief or other document contains ____4671____ [*state number of*] words

[ ]  this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]  this brief or other document has been prepared in a proportionally spaced typeface using
MS Word _____ [*identify word processing program*] in
Times New Roman, 14 pt _____ [*identify font size and type style*]; **or**

[ ]  this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)  Thomas A. Bright _____

Party Name appellee _____

Dated: 2/10/2023 _____